IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

| | |
|---|---|
| JIM DeHOFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-1052-WEB |
| ) | |
| KANSAS AFL-CIO EMPLOYEE ) | |
| BENEFIT PLAN AND TRUST, ) | |
| ) | |
| Defendant. ) | |

Memorandum and Order

Plaintiff Jim DeHoff filed a complaint against Kansas AFL-CIO Employee Benefit Plan and Trust (hereafter the "Plan") alleging the Plan unlawfully reduced his benefits. DeHoff requests monetary damages and equitable relief. The Plan filed an answer, which included three counterclaims: breach of fiduciary duty, participation in prohibited transactions, and equitable reformation. Before the court is DeHoff's Motion to Dismiss the Counterclaims. (Doc. 8).

I. Facts

1. Defendant Kansas ALF-CIO Employee Benefit Plan and Trust is a defined benefit pension plan and trust under ERISA § 3(2)(A), qualified under Internal Revenue Code § 401(a) and Treasury Regulation § 1.401-1(b)(1)(i), and is established for the benefit of Kansas AFL-CIO employees and former employees who qualify as participants under the terms of the plan.

2. DeHoff is a participant under the terms of the Plan.

3. DeHoff was the Plan Administrator during the relevant restatement or attempted restatement of the plan, in 1997 and 1998, and remained the Plan Administrator until his retirement in 2006.

4. The Plan was adopted for the benefit of Kansas AFL-CIO employees qualifying as

participants under the terms of the Plan, effective October 1, 1964.

5. The Plan was amended or restated, or there was an attempt to amend or restate the Plan, on October 1, 1976, October 1, 1984, October 1, 1989, October 1, 1994, October 1, 1997, October 1, 1999, October 1, 2002 and November, 2007.

6. The Plan defines "Accrued Benefit" to be "the Normal Retirement Pension determined under Section 5.1 [of the Plan] that a Participant would receive at his Normal Retirement Date based on his Plan Years of Service and Average Monthly Compensation as of such given time."

7. The Plan Restatement dated October 1, 1997 included an amendment to the Plan to increase a participant's Accrued Benefit to the 1997 Benefit Formula (the "1997 Plan Amendment"). The defendant states that the 1997 Amendment was an invalid attempt to amend the Plan.

8. The 1997 Benefit Formula was included as the Accrued Benefit in the Plan Restatement dated October 1, 2002. The Plan Restatement dated October 1, 1997, the Plan Restatement dated October 1, 1999 and the Plan Restatement dated October 1, 2002 were executed by the Plaintiff and U.S. Bank as Plan Trustee.

9. The Plan Restatement dated October 1, 1997, which includes the 1997 Plan Amendment, was executed by the Plaintiff and U.S. Bank as Plan Trustee in 1998.

10. The 1997 Benefit Formula was included as the Accrued Benefit in the Plan Restatement dated October 1, 2002. However, that 2002 restatement and the 1997 Benefit Formula it contained was never approved by the Plan sponsor's governing body. The Employer's governing body had adopted the initial Plan in 1964 and all benefit increases except

that increase contained in the 1997 Amendment.

11. A Summary Plan Description was created, by DeHoff, to be distributed to all plan Participants. The Summary Plan Description included the 1997 Benefit Formula as the applicable benefit formula and stated the plan was amended in October 1, 1997 "to increase benefits to employees actively employed at that time." DeHoff states that the Summary Plan was distributed, AFL claims the Summary Plan was never distributed. ALF states a copy of the Summary Plan was in the file of the bank trustee, but was not in the Plan files in the offices of the Employer.

12. DeHoff retired from Kansas-AFL-CIO on August 31, 2006.

13. In 2007, Kansas AFL-CIO's executive board directed that the Plan's benefit formula be amended to restate the benefit formula in effect prior to the 1997 Amendment.

14. On November 19, 2007, Kansas AFL-CIO sent DeHoff and other Plan participants a letter stating that the Plan was being amended to reinstate "the last benefit formula approved by the Employer." In this letter, Kansas AFL-CIO states it modified the Plan because "irregularities were discovered in the Plan that enhanced benefits for some beneficiaries without the approval of [Kansas AFL-CIO]."

II. Standard of Review

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)). Furthermore, "all well-pleaded factual allegations in the complaint are

accepted as true and viewed in the light most favorable to the nonmoving party." Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). Documents attached to the complaint are considered as part of the pleadings. Tal v. Hogan, 453 F.3d 1244, 1264 n. 24 (10th cir. 2006).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must look for "plausibility in the complaint." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). Under this standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The possibility that plaintiff could prove some facts in support of the pleaded claims is insufficient; the court must believe the plaintiff has a reasonable likelihood of showing factual support for the claims. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The plaintiff must "nudge his claims across the line from conceivable to plausible" in order to survive a motion to dismiss. Bell Atlantic Corp. at 1974.

III. Discussion

DeHoff filed a Motion to Dismiss the Plan's Counterclaims. DeHoff argues the breach of fiduciary duty and engaging in prohibited transactions claims are barred by the statute of limitations and the concealment claim is not sufficiently plead to extend the statute of limitations. The Plan argues that because the actions of DeHoff were not discovered until 2007, the six year fraud or concealment statute of limitations did not begin until the discovery of the unlawful amendment. The Plan also argues that the fraud and concealment claims were sufficiently plead.

Section 1113 of Title 29 provides a statute of limitations for ERISA actions:

No action may be commenced under this title with respect to a fiduciary's breach
of any responsibility, duty, or obligation under this part, after the earlier of -

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

DeHoff argues that the date of the last possible action he took as a fiduciary regarding the 1997 amendment was in 1998. Therefore, he argues the six year statute of limitations runs at the latest, in 2004. The Plan argues that the statute of limitations did not begin to run until the date of discovery, which was in 2007. The Tenth Circuit has not specifically addressed when the statute of limitations begins to run in a situation similar to the case at hand. There is also disagreement in the circuits whether the six year exception includes fraud and concealment as separate actions or whether it only applies to cases of fraudulent concealment. DeHoff did not address this issue in his initial motion, but discussed it in his Reply. DeHoff argues that regardless of which circuit we follow, whether the Plan has to show fraud, concealment, or fraudulent concealment, the Plan has not adequately plead.

The Third Circuit ruled that the "fraud and concealment" language "applies the federal common law discovery rule to ERISA breach of fiduciary duty claims.... [w]hen a lawsuit has been delayed because the defendant itself has taken steps to hide its breach of fiduciary duty, the limitations period will run six years after the date of the claim's discovery." Ranke v. Sanofi-Synthelabo Inc., 436 F.3d 197, 204 (3rd Cir. 2006), quoting Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1552 (3rd Cir. 1996). The Court stated that the complaint must allege evidence that the "defendant took affirmative steps to hide its breach of fiduciary duty." Id. In Kurz, the court found the limitations period begins to run at the date of the discovery. Kurz, 96 F.3d at 1552.

The Second Circuit found that the "fraud or concealment" provision does not toll the six or three year statute of limitations, "it prescribes a separate statute of limitations of six years from the date of discovery." Caputo v. Pfizer Inc., 267 F.3d 181, 189 (2nd Cir. 2001).  The Second Circuit went on to state that "Congress intended to provide a lengthier statute of limitations where the fiduciary breached its duty by misrepresenting or failing to disclose a material fact that ERISA required the fiduciary to disclose, most likely because such violations would be difficult to discover.  Although the final version of the statute adopted a six-year term and a discovery rule (i.e., the limitations period begins to run when the employee discovers or with due diligence should have discovered the breach) it retained the class of actions to which the exception applied." Id. at 190.

The First Circuit found that "Section 1113 explicitly incorporates the federal common law 'discovery rule,' which postpones the beginning of the limitation period from the date when the plaintiff is injured to the date the injury is discovered." J. Geils Band Employee Ben. Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1253 (1st Cir. 1996), citing Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990).  The Court determined that actual and constructive discovery were included in the scope of discovery. Id. at 1254.  The First Circuit, like the Second and Third Circuits, determined that to toll the limitations period under Section 1113, the claimant must plead with particularity the facts giving rise to the fraudulent concealment claim. Id. at 1255.

The Plan alleges that due to DeHoff's fraud and concealment, the breach was not discovered until 2007.  This analysis goes hand in hand with the Rule 9 analysis, since before the court can determine if the six year statute of limitations applies, the court must determine

whether fraud and concealment were plead with particularity.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). The rule's purpose is to provide the defendant fair and adequate notice of the claim and to allow the defendant to respond on an informed basis. Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 987 (10th Cir. 1992). A fraud claim requires the party to "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir. 2006). Thus, to survive a motion to dismiss and to take advantage of ERISA's six year statute of limitations for fraud or concealment, a plaintiff must plead fraud with particularity.

The plan alleges the following facts in the attempt to establish that DeHoff breached his fiduciary duties and committed prohibited acts: DeHoff was the Plan Administrator, thus a named fiduciary under ERISA, as well as a fiduciary based on his exercise of control over the Plan and the Plan assets. DeHoff breached his fiduciary duties when he attempted to amend the Plan without disclosing the 1997 Amendment to the executive board or by obtaining the board's approval. The Plan argues that the Amendment of the Plan caused the plan to become underfunded. Before DeHoff left his employment, he notified the executive board that the Plan was "slightly underfunded" without disclosing the extent of the underfunding, or why or how it occurred. DeHoff then recommended to the executive board before he left his employment that the Plan be amended to reduce the future benefits for participants not yet retired. DeHoff did not file the Plans's report with the IRS, the Department of Labor, and the Pension Benefit Guaranty

Corporation, causing approximately $50,000 in fees and penalties. DeHoff amended the Plan while he was plan administrator, which resulted in an increase of retirement benefits for him, although the Amendment was detrimental to the Plan.

The Plan alleges the following facts in an attempt to establish DeHoff acted with fraud and concealed his breach of fiduciary duties and prohibited acts in a number of different ways: First, DeHoff amended the Plan in 1997, although DeHoff did not have the authority to amend. Second, DeHoff did not disclose the 1997 Amendment to the executive board or obtain the board's approval. Third, DeHoff did not file a copy of the amended plan in the office of the employer, but only with the trustee of the bank. The Plan further alleges that DeHoff did not file the Plan's reports with the IRS, the Department of Labor, and the Pension Benefit Guaranty Corporation, in an effort to conceal the Plan changes. When the Plan incurred $50,000 in fees and penalties, instead of notifying the employer, DeHoff paid the expenses from the Plan, again concealing the problems with the Plan from the employer.

This Court finds the counterclaim pleadings allege that DeHoff, while plan administrator, a plan participant, and a fiduciary, amended the Plan in 1997 and 1998. The facts alleged by the Plan state that DeHoff did not disclose the amendment, failed to file the necessary reports with Governmental agencies, failed to notify the employer of the penalties and fees, and failed to obtain approval from the board. If the facts as alleged by the Plan are true, DeHoff knowingly misrepresented the value of the Plan and removed assets from the Plan without authority. As a result, the Plan was underfunded, the Plan incurred penalties and fees, and future plan participants will receive less money. The Plan has sufficiently set forth the who, the time, the place, the contents of the false representation, and the consequences of DeHoff's alleged actions.

Rule 9's requirement that fraud be plead with particularity is satisfied.

Since the Plan plead fraud and concealment, the six year statute of limitation is applicable to breach of fiduciary duty and prohibited transaction claims. DeHoff argues that the applicable statute of limitation is three years from the date of actual knowledge, which was in 2007. However, this argument ignores the fact that the Plan plead fraud and concealment to apply the six year statute of limitations.

The parties agree that any alleged breach was discovered in 2007. Applying the analysis of the Third and Second Circuits, the statute of limitations period begins to run at the time of discovery, in 2007. Since the lawsuit was delayed due to the action of DeHoff, the limitations period begins to run when the breach is discovered. The counterclaims of the Plan are filed within the six year statute of limitations and are not barred.

IV. Conclusion

IT IS THEREFORE ORDERED, for the reasons set forth above, DeHoff's Motion to Dismiss (Doc. 8) be denied.

IT IS SO ORDERED this 23rd day of September, 2011.

    s/ Wesley E. Brown
Wesley E. Brown
United States Senior District Court Judge