**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JIM DEHOFF, | ) |
| | ) |
|     Plaintiff/Counterclaim | ) |
|     Defendant, | )   **CIVIL ACTION** |
| | ) |
| v. | )   No. 11-1052 |
| | ) |
| KANSAS AFL-CIO BENEFIT PLAN | ) |
| AND TRUST, | ) |
| | ) |
|     Defendant/Counterclaim | ) |
|     Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| KANSAS AFL-CIO ASSOCIATION, | ) |
| | ) |
|     Counterclaim Plaintiff. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This matter is before the court on a Rule 60(b)(1) motion for relief from judgment by Kansas AFL-CIO Benefit Plan and Trust (hereinafter "the Plan") and Kansas AFL-CIO Association (hereinafter "Employer"). (Doc. 77). Plaintiff has filed a response opposing the motion. (Doc. 79).

**I. Background.**

Plaintiff filed this action in February of 2011 claiming the Plan had unlawfully reduced his retirement pension in violation of ERISA. The Plan and Employer denied the allegation and claimed that plaintiff, the former administrator of the Plan, was liable for violation of fiduciary duties imposed by ERISA.

The record shows that discovery began in this case in March of 2011 and that it included initial disclosures, written

interrogatories, and requests for production. Numerous witnesses were deposed, including Wil Leiker (Employer's former Executive Vice President and Plan administrator), Jim DeMars (Plan's ERISA consultant), Steve Cooper (Plan's former actuary), Ron Eldridge (Employer's former Executive Secretary), and Andy Sanchez (Employer's then-Executive Secretary).

A pretrial order filed January 10, 2013 set forth the parties' contentions and claims. (Doc. 55). Plaintiff asserted that a 1997 Plan amendment had increased the maximum available pension benefit from 70% to 85%. Plaintiff began receiving the 85% benefit when he retired in 2006, but the Plan and Employer thereafter reduced his pension, saying the benefit level had been improperly raised by plaintiff without Board approval. Plaintiff alleged in the pretrial order that defendants violated ERISA's anti-cutback rule by reducing his pension to a 65% level. The Plan and Employer asserted that the 1997 amendment raising the maximum to 85% was invalid and Employer therefore "corrected the plan benefit formula ... [to] the formula in effect in 1994, namely, 70% of pay...." The pretrial order included a stipulation between the parties that the Plan's pension benefit formula "was increased in 1994 and was 70% of pay [for] persons with 15 more years of service" such as plaintiff.

The court conducted a bench trial from March 12-14, 2013, and issued a comprehensive Memorandum Decision on August 28, 2013. Among other things, the court found plaintiff had improperly adopted the 1997 amendment without Employer's approval. As a result, plaintiff was liable to the Plan in the sum of $40,067 for violation of fiduciary duties and for engaging in prohibited transactions. Because the 1977

amendment was invalid, defendant's refusal to pay plaintiff an 85%
pension did not violate ERISA's anti-cutback rule. But plaintiff
additionally argued the reduction of his pension to 65%, instead of
70%, was a violation of the rule. As to that point, the court found
that although Employer had voted in 2007 to reduce pensions to a 65%
level, it subsequently ratified a 70% benefit. Doc. 73 at 40-41.
Moreover, defendants conceded the appropriate benefit level in 1994
was 70%. Thus, a reduction of plaintiff's pension below a 70% level
would violate the anti-cutback rule. The court noted the evidence
about whether plaintiff was actually being paid a 65% or a 70% benefit
was somewhat unclear, but on the whole it indicated plaintiff was only
receiving a 65% benefit.[1] The court's order noted that if this was
incorrect, defendants could file a motion for reconsideration. No
motion was filed. Because the court could not compute the exact
benefits owing, it directed the parties to confer and file a joint
statement of the benefits due under the court's findings.

The parties filed a joint statement on October 1, 2013. (Doc.
74). It included a stipulation "that plaintiff DeHoff has been
underpaid by [the Plan] since December 2007. He is entitled to receive
the difference between 70% and the 65% he was paid," and it set forth
the precise amounts owing. The following day, October 2, 2013, the
court entered a final judgment incorporating the figures provided by
the parties. (Doc. 75). The judgment included a finding that plaintiff
was entitled to recover $16,294 from the Plan for past pension

---

[1] DeHoff's benefit was not based on a simple flat-rate
calculation. Under the Plan the available percentage was multiplied
by an average salary and was then reduced to reflect elections such
as early retirement and spousal benefits.

underpayments and a monthly pension going forward of $3,259.01. On the crossclaims, the judgment provided that plaintiff was liable to the Plan and Employer in the amount of $40,067.

On November 12, 2013, plaintiff applied for a writ of execution. (Doc. 76). The following day, counsel for the Plan and Employer filed a motion for relief from judgment. The motion asserted that the Plan "did not know in advance about the Pretrial Order terms as to the benefit amount or Joint Statement and did not consent to them, as Defendant's counsel believed that he knew, based on a different version of the 2007 Plan restatement (which was never adopted) he had received from an employee of the third party pension administrator (DeMars Pension Consulting Services)." (Doc. 78 at 1). Defense counsel provided affidavits from himself, from Wil Leiker, and Bruce Tunnell (Employer's current Executive Vice President and Plan Administrator). Collectively, they asserted that defense counsel mistakenly believed that a 70% benefit had been approved by Employer in 1994, and, as a result, defense counsel had entered into stipulations in the pretrial order and joint statement to that effect without the consent of Employer or the Plan.

## II. **Rule 60(b)(1)**.

Rule 60(b)(1) provides that "on motion and just terms, the court may relieve a party or its legal representative from a final judgment ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;..." This "mistake" provision allows for reconsideration of judgments where a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority from a party. See Cashner v. Freedom Stores, Inc., 98 F.3d

572, 576 (10th Cir. 1996). But it is not available when a party seeks to undo the consequences of its deliberate acts. <u>Yapp v. Excel Corp.</u>, 186 F.3d 1222, 1231 (10th Cir. 1999). A litigation mistake is generally not excusable unless it is one the party "could not have protected against, such as counsel acting without authority." <u>Yapp</u>, 186 F.3d at 1231. Mere "carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)." <u>Pelican Production Corp. v. Marino</u>, 893 F.2d 1143, 1146 (10th Cir. 1990).

A motion under Rule 60(b)(1) must be made "within a reasonable time," and in no event more than one year after entry of the judgment. Fed. R. Civ. P. 60(c)(1).

## III. Discussion.

Plaintiff contends the motion for relief from judgment is untimely and is otherwise improper. (<u>See</u> Doc. 79 at 5). The court agrees that defendants have unreasonably delayed in seeking relief from the effects of a stipulation that dates back to the pretrial order and which permeated the litigation. The stipulation was mentioned and relied upon time and time again in this case. Even accepting everything in defendants' affidavits as true, the allegations do not demonstrate sufficient grounds for relief from the judgment. Defendants are essentially asking to reopen a matter they had a fair and full opportunity to litigate, under circumstances which would result in substantial and unfair prejudice to plaintiff. <u>Cf</u>. <u>Mullin v. High Mountain</u>, 182 Fed.Appx. 830, 2006 WL 1520187 (10th Cir. 2006) (a rule 60(b)(1) motion is not timely merely because it is filed within one year of the judgment; the court takes into consideration the interest in finality, the reason for the delay, the practical

ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties).

Defendants were on notice with the filing of the pretrial order that a stipulation had been made that the 1994 Plan benefit formula was 70%. The affidavits accompanying the instant motion do not address whether the pretrial order was made available to defendants, what efforts defendants made to keep abreast of the litigation, or what materials they reviewed in connection with the case. The record shows that the stipulation was mentioned and discussed repeatedly in filings after the pretrial order and, for that matter, during and after trial.

On March 6, 2013, plaintiff argued in a pretrial motion that defendants' proposed findings of fact concerning the 1994 amendment were contrary to the pretrial order. See Doc. 67 at 2 ("Nowhere in the Pretrial Order does the defendant allege that the amendment of the plan in 1994 to provide for benefits of 70% was invalid, done improperly or without authority."). Defendants' response made clear they were standing by the stipulation and were not challenging the 1994 amendment. See Doc. 69 at 3-4 ("Counterclaimants ... have no intent to deviate from their prior stipulation in the Pretrial Order regarding the 1994 Amendment. * * * [their] "proposed findings do not challenge the validity of the 1994 Amendment, nor are Counterclaimants attempting to challenge the validity of the 1994 Amendment in this lawsuit. The 1997 Amendment is the only amendment at issue in this case.").[2]

---

[2] This was done despite defense counsel's assertion in his affidavit that "shortly before trial" he became aware there were two signed versions of the 1994 plan amendment – one with a 65% benefit and one with a 70% benefit. Counsel asserts that he erroneously

As alluded to previously, the evidence at trial about the 1994 plan amendment was not entirely clear. At one point Wil Leiker was specifically asked about the 70% stipulation. (Tr. at p. 313). Defense counsel reiterated at trial that there was no challenge to the 1994 amendment and presented evidence that Employer had endorsed a 70% benefit formula in 2009. The court's memorandum decision of August 28, 2013 noted as much, as well as the fact that "Employer and the Plan now concede that the accrued benefit limit at the time of Plaintiff's retirement was in fact 70%." Doc. 73 at 41.

Records attached to plaintiff's response show that on August 29, 2013, defense counsel e-mailed a copy of the court's decision to numerous people affiliated with defendants – including affiants Leiker and Tunnell. Doc. 79-2 at 1. The e-mail contained defense counsel's summary of the decision. It specifically mentioned the court's finding that plaintiff was entitled to a 70% rather than a 65% benefit, with counsel adding "[y]ou remember that the formula should have been 65%, which was what Board approved, but when [the actuary] wrote it, it was 70%." Counsel stated he was "pretty sure" plaintiff was being paid a 70% benefit and, if so, then "we'll file a very short stipulation that [plaintiff] was entitled to 70% and was in fact paid 70%...." As it turned out, counsel's belief that plaintiff was receiving 70% was incorrect; he was only being paid a 65% benefit. But defendants can claim no unfair surprise from that erroneous factual belief, as they

believed the 65% version had been superseded by the 70% version. He admits that he did not consult Leiker about the two versions of the amendment, despite the fact that Leiker, as stated in his affidavit, "worked extensively" with counsel. Assuming the truth of these averments, the court cannot find that this "two ships passing in the night" explanation justifies the relief sought.

were the ones who calculated and paid the benefits. They had it within their grasp at any time to ascertain the true level and never did so.

Not only do defendants' affidavits say nothing about their state of knowledge prior to or during trial, they do not even mention having received the court's ruling on August 29, 2013, well before the October 1 joint statement was filed. They do not address the efforts they made, if any, to keep informed of the facts or to instruct counsel regarding litigation positions. It appears that they chose to simply leave strategic decisions to their counsel, without involving themselves in the decisions. They cannot now claim that their lack of knowledge justifies relief from the judgment. See Yapp, 186 F.3d at 1231 (a litigation mistake is not excusable if the party could have protected against it). Defendants' affidavits tiptoe around these questions, merely asserting that they never gave consent for the stipulation.

Against these considerations the court finds that granting relief from the judgment would cause plaintiff substantial prejudice. The parties have undoubtedly already incurred substantial legal expense in bringing the issues to trial, and re-opening the question of whether a 70% benefit was authorized or ratified by Employer will result in even more expense, as well as the court's time. As the court noted in its memorandum decision, there was some evidence at trial that Employer ratified a 70% benefit, although defendants now dispute it. To resolve questions about enactment of the 1994 plan amendment and any actions by Employer in subsequent years that might have ratified the amendment would basically involve a retrial of this case, almost three years after it was filed. That is simply not justified

when defendants could have litigated the question in the first instance and have failed to show that counsel's alleged mistakes deprived them of the opportunity of doing so.

## IV. Conclusion

Defendants' Motion for Relief from Judgment (Doc. 77) is DENIED.

IT IS SO ORDERED.

Dated this __9th__ day of December 2013, at Wichita, Kansas.

s/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE